**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Max S. Roberts*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
       mroberts@bursor.com

*Attorneys for Plaintiffs*

**Pro Hac Vice Application Forthcoming*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY BALLETTO, ADAM FAJGE, and WENDY BABCOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.<br><br>Defendant. | Case No. 4:23-cv-01017-JSW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Beverly Balletto, Adam Fajge, and Wendy Babcock ("Plaintiffs") bring this action against American Honda Motor Co., Inc. ("Honda" or "Defendant") on behalf of themselves and all others similarly situated. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Honda for aiding, agreeing with, employing, procuring, or otherwise enabling the wiretapping of the electronic communications of visitors to its website, honda.com (the "Website"). The wiretaps, which are embedded in the chat function on the Website, are used without the consent of visitors to the Website. Defendant contracts with a third party, Salesforce, Inc. ("Salesforce"), to provide the software that runs Defendant's chat function. The electronic communications made in the chat function are routed through the servers of and are used by Salesforce to, among other things, secretly observe and record website visitors' electronic communications in real time. By doing so, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA").

2. Plaintiffs bring this action on behalf of all persons who used the chat function on the Honda website in California and Pennsylvania, and whose electronic communications were intercepted or recorded by Salesforce.

## PARTIES

3. Plaintiff Beverly Balletto is a California resident and citizen who resides in Mendocino County. In or about April 2022, and while in California, Ms. Balletto visited the Honda website from her computer. Ms. Balletto used the chat function to interact with a live agent on the Website. During this visit, her electronic communications with Honda—specifically, the words she entered in the chat function—were intercepted in real time and were disclosed to Salesforce through the wiretap. Ms. Balletto was unaware at the time that her electronic communications were being intercepted in real-time and would be disclosed to Salesforce. Ms.

1    Balletto was not asked for, nor did she provide her prior consent to, disclosure of her chats to
2    Salesforce.
3           4.      Plaintiff Adam Fajge is a Pennsylvania resident and citizen who resides in Bucks
4    County.  In or about October 2022, and while in Pennsylvania, Mr. Fajge visited the Honda website
5    from his computer.  Mr. Fajge used the chat function to interact with a live agent on the Website.
6    During this visit, his electronic communications with Honda—specifically, the words he entered in
7    the chat function—were intercepted in real time and were disclosed to Salesforce through the
8    wiretap.  Mr. Fajge was unaware at the time that his electronic communications were being
9    intercepted in real-time and would be disclosed to Salesforce.  Mr. Fajge was not asked for, nor did
10   he provide his prior consent to, disclosure of his chats to Salesforce.
11          5.      Plaintiff Wendy Babcock is a Pennsylvania resident and citizen who resides in
12   Franklin County.  In or about September 2023, and while in Pennsylvania, Ms. Babcock visited the
13   Honda website from her computer.  Ms. Babcock used the chat function to interact with a live
14   agent on the Website.  During this visit, her electronic communications with Honda—specifically,
15   the words she entered in the chat function—were intercepted in real time and were disclosed to
16   Salesforce through the wiretap.  Ms. Babcock was unaware at the time that her electronic
17   communications were being intercepted in real-time and would be disclosed to Salesforce.  Ms.
18   Babcock was not asked for, nor did she provide her prior consent to, disclosure of her chats to
19   Salesforce.
20          6.      Defendant Honda is a California corporation whose principal place of business is
21   1919 Torrance Blvd, Torrance, California 90502.

                              **JURISDICTION AND VENUE**

23          7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)
24   because this case is a class action where the aggregate claims of all members of the proposed class
25   are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the
26   proposed class is citizen of a state different from at least one Defendant.
27          8.      This Court has personal jurisdiction over Defendant because Defendant's principal
28   place of business is in California.

9. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial portion of the events giving rise to this action occurred within this District.

## FACTUAL ALLEGATIONS

### I. Overview Of The Wiretaps

10. Salesforce provides a service called "Chat," which is a combination of a basic customer service chat function and backend analytics tools to ostensibly improves a company's customer service experience.

11. The Chat service can be used with any website, as Chat is an Application Programming Interface (API) that can be "plugged into" an existing website. The Chat API is run from Salesforce web servers but allows for chat functionality on the contracting company's website. A company must purchase a license from Salesforce to use the Chat feature on its website.

12. In short, Salesforce runs the Chat service from its servers, but customers interact with the Chat service on a separate company's website. Crucially, the Chat function is presented in such a way that customers are communicating with a company representative—and believe that is the only person they are communicating with. There is no mention that Salesforce is also surveilling or receiving the electronic communications, even though, in fact, Salesforce is also surveilling and receiving the electronic communications.



13. Honda is one of those companies. Thus, whenever a chat message is sent from Plaintiff to Honda customer service, it is first routed through a Salesforce server.

14. The Chat service needs to run on Salesforce servers because Salesforce analyzes the customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services.

15. The Live Agent Administrator Manual (the "Manual") from Salesforce notes that "Chat transcripts are created automatically and are meant to provide a paper trail about your agents' interactions with customers."

16. The Manual further provides that supervisors can view transcripts in real time. This is accomplished because the contents of the chat are being routed through Salesforce webservers in real time, and then sent to the supervisor requesting the live transcript.

17. Thus, through the Chat function, Salesforce is able to record the other electronic communications of visitors to websites where the code is installed, including the content of all chat communications between a website and visitors to the website. It also allows Salesforce to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

18. An example of this transmission of data can be seen in the image below. As a chat message is sent to the Honda customer service representative (*picture left*), network traffic simultaneously flows through a Salesforce web server directly to Salesforce (*picture right*), as indicated by the "request URL" being "salesforceliveagent.com."



19. Thus, through the Chat function, Salesforce directly receives the electronic communications of visitors to Honda's website, in real time.

20. Salesforce's Chat also has a "Sneak Peek" feature, which is operating on the Website as indicated by the code above:



21. When "Sneak Peek" is enabled on a website (such as Defendant's), as the below screenshots of a demonstration of Sneak Peek indicate, anything that "an end user" types is displayed on Salesforce's dashboard, with the communications also going to Salesforce[1]:



---

[1] How to Setup Sneak Peek in Salesforce Chat?, https://youtu.be/lGDdRcVBPzU.



22. More invasively, the "Sneak Peak" feature transmits what a user is communicating to a website *before* a user actually sends the chat. In other words, if a user simply types something into the Chat function, the message is transmitted to Salesforce before "Send" is clicked:



23. Accordingly, as currently deployed on Defendant's Website, Salesforce's Chat API constitutes wiretapping.

24. When Chat is used on the Website, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, Chat involves Salesforce—a separate and distinct third-party entity from the parties to the conversation—using Chat to eavesdrop upon, record, extra data from, and analyze a conversation to which they are not a party. This is so because Salesforce itself is collecting the content of any conversation. That data is then analyzed by Salesforce before being provided to any entity that was a party to the conversation (like Defendant).

25. Once Salesforce intercepts the Chat communications, it has the capability to use such information for its own purposes. *First*, Chat communications are sent to Salesforce's Einstein data intelligence platform, which "is natively embedded into the Salesforce Platform and leverages data from CRM and external applications to provide insights, predictions, and generated content directly in the flow of work."[2] Salesforce uses data that is submitted to Einstein to train the AI models that form the basis of some of its services (*i.e.*, "may be used to train AI models"), to improve the services it provides to all of its customers, and to develop new products and services for current customers.[3] In all cases, Salesforce has the capability to use the Chat data it intercepts for its own purposes—*e.g.*, to improve its products and services, or to develop new products and services.

26. *Second*, once Salesforce's Einstein platform receives the intercepted data from Chat, Salesforce has the capability to analyze that data in conjunction with Einstein's AI. These capabilities include but are not limited to:

- Einstein Case Wrap Up, through which Salesforce suggests recommendations for customer service agents to say "based on language patterns in your closed cases and chat transcripts"[4];

- Einstein Conversion Mining, which "[u]se[s] machine learning and existing conversation data to identify the top reasons your customers contact you"[5]; and

---

[2] https://help.salesforce.com/s/articleView?id=sf.admin_einstein_features_data_usage.htm&type=5
[3] *Id*.
[4] https://help.salesforce.com/s/articleView?id=release-notes.rn_einstein_classification_wrap_up.htm&release=232&type=5
[5] https://help.salesforce.com/s/articleView?id=sf.conversation_mining_intro.htm&type=5

- Einstein Reply Recommendations, through which Salesforce automatically crafts reply messages based on chat transcripts for customer service agents to use.[6]

27. In sum, Salesforce has the capability to use Chat communications to (i) improve Salesforce's own products and services; (ii) develop new Salesforce products and services; and (iii) analyze Chat communications to assist with customer service interactions and data analytics.

28. Salesforce's business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites through Chat.

29. One of Salesforce's partners is Defendant Honda.

30. Pursuant to an agreement with Salesforce, Honda aided, agreed with, employed, procured, or otherwise enabled Salesforce to wiretap visitors to its Website by voluntarily embedding the software code for Chat on the Website.

31. Honda knows that Salesforce, through software, captures the electronic communications of visitors to the Website, and pays Salesforce to conduct these activities.

## II. Defendant Aided, Agreed With, Employed, Procured, Or Otherwise Enabled Salesforce's Wiretapping Of Plaintiff's Electronic Communications

32. Plaintiffs visited Defendant's Website as set forth above. During those visits, Plaintiffs used the Chat function to speak with a live agent.

33. During those visits, Salesforce, through the Chat function, intercepted the contents of Plaintiffs' electronic communications with Defendant's customer service agent in real time. The Salesforce wiretap also captured the date and time of the visits, the duration of the visits, Plaintiff's IP address, her locations at the time of the visit, her browser type, and the operating system on her device.

34. Upon capturing Plaintiffs' electronic communications, Salesforce had the capability to use Plaintiffs' communications for its own purposes, including but not limited to (i) improving Salesforce's own products and services; (ii) developing new Salesforce products and services; and (iii) analyzing Plaintiffs' Chat communications to assist with Defendant's customer service interactions and data analytics.

---

[6] https://help.salesforce.com/s/articleView?id=sf.reply_rec_intro.htm&type=5

35. Salesforce's recording of electronic begins the moment a user accesses or interacts with the Chat feature on Defendant's website, prior to a user consenting to any sort of privacy policy or the wiretaps generally. Nor are users told, prior to being wiretapped, that their electronic communications are being simultaneously directed to Salesforce, rather than only to Defendant's customer service agent.

36. Users, including Plaintiffs, are thus not on notice of any wiretapping when they begin a Chat interaction, nor do they provide their prior consent to the same.

37. Plaintiff Balletto was in California when she accessed Defendant's website (which is hosted by Honda's servers in California) through an internet browser. Upon having the browsers access the website in California, Salesforce's Chat function instructed the browser in California to send electronic communications directly to it from the California location of the browser to Salesforce's servers, which are also located in California.

38. Plaintiffs Fajge and Babcock were in Pennsylvania when they accessed the Website through their internet browsers. Upon having their browsers access the Website in Pennsylvania, Salesforce's Chat function instructed the browser in Pennsylvania to send electronic communications directly to it from the Pennsylvania location of the browser to Salesforce's servers.

39. Salesforce has access to class members' chat interactions with Honda because Salesforce contracts with Honda to provide the Chat service.

**CLASS ALLEGATIONS**

40. Plaintiffs seek to represent a class of all persons who used Salesforce's Chat function on the Honda website, and whose electronic communications were intercepted or recorded by Salesforce (the "Class").

41. Plaintiff Balletto also seeks to represent a subclass of all California residents who used Salesforce's Chat function on the Honda website while in California, and whose electronic communications were intercepted or recorded by Salesforce (the "California Subclass").

42. Plaintiffs Fajge and Babcock also seek to represent a subclass of all Pennsylvania residents who used Salesforce's Chat function on the Honda website while in Pennsylvania, and

whose electronic communications were intercepted or recorded by Salesforce (the "Pennsylvania Subclass") (collectively with the California Subclass, the "Subclasses").

43. The Class and Subclasses shall collectively be referred to as the "Classes."

44. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands. The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

45. Common questions of law and fact exist as to all Class and Subclass Members and predominate over questions affecting only individual members of the Classes. Common legal and factual questions include, but are not limited to, whether Defendant has violated the CIPA, whether Defendant has violated the WESCA, and whether members of the Classes are entitled to actual and/or statutory damages for the aforementioned violations.

46. The claims of the named Plaintiffs are typical of the claims of the Classes because Plaintiffs, like all other members of the Classes, visited Honda's website and had her electronic communications intercepted and disclosed to Salesforce—as aided, agreed with, employed, and procured by Honda—through the use of Salesforce's Chat function.

47. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

48. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential

for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT ONE
### Violation of California Invasion of Privacy Act
### Cal. Penal Code § 631

49. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

50. Plaintiffs bring this claim individually and on behalf of the Classes against Defendant.

51. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> Or

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> Or

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> Or

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

52. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

53. Salesforce's Chat API is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

54. Salesforce is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Salesforce was a third party to any communication between Plaintiff and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

55. At all relevant times, by using Chat, Salesforce willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class and California Subclass Members, on the one hand, and Defendant's Website, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

56. Specifically, (i) as alleged above, Salesforce intercepted each communication on the Websites while the communication was in transit; (ii) each communication by Plaintiff Balletto and California Subclass Members was sent from California and received by Salesforce in California;

and (iii) each communication by Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members was received by Salesforce in California.

57. Upon interception of the electronic communications, as alleged above, Salesforce had the capability to use the electronic communications for its own purposes.

58. At all relevant times, Defendant aided, agreed with, employed, or otherwise enabled Salesforce to wiretap consumers to the Website using Chat and to accomplish the wrongful conduct at issue here.

59. Plaintiffs and members of the Classes did not consent to Salesforce's intentional access, interception, reading, learning, recording, and collection of Plaintiffs' and members of the Classes' electronic communications.  Nor did Plaintiffs and members of the Classes consent to Defendant aiding, agreeing with, employing, or otherwise enabling Salesforce's conduct.

60. Because Defendant and Salesforce are headquartered in California, a CIPA § 631 claim can be pursued by all users of the Website nationwide. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (finding that non-resident plaintiff had statutory standing under CIPA where recordings by California defendant took place in California); *see also Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (same and noting "[c]ourts have declined to read CIPA's legislative intent as a limitation on standing when the statute does not impose any residency requirements"); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents.").

61. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

62. Plaintiffs and members of the Classes seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

# COUNT II
# Violation of Pennsylvania Wiretap Act
# 18 Pa. Cons. Stat. § 5701, *et seq.*

63. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

64. Plaintiffs Fajge and Babcock bring this claim individually and on behalf of the Pennsylvania Subclass against Defendant.

65. The WESCA prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication.  18 Pa. Cons. Stat. §§ 5703(1)-(3).

66. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(A).

67. At all relevant times, through its Chat API, Salesforce intentionally intercepted and used the electronic communications between Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members on the one hand, and Defendant's customer service agents on the other hand.

68. Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members did not provide their prior consent to having their electronic communications intercepted by Salesforce, nor did Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members provide their prior consent to Honda's procurement of Salesforce's wiretapping.

69. At all relevant times, Defendant procured Salesforce to wiretap consumers to the Website using Chat and to accomplish the wrongful conduct at issue here.

70. Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members had a justified expectation under the circumstances that their electronic communications would not be intercepted by Defendant. Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members reasonably believed these communications would only be accessed by the Honda customer service agent with whom they were corresponding, and not by a third party like Salesforce.

71. Because Website owners did not disclose that Salesforce acquires the content of communications sent through its Chat API—rather than simply providing a piece of software that Website owners can use but that Salesforce has no access to—Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members were not aware that their electronic communications were being intercepted by Salesforce. Further, Defendant cannot avoid liability "merely by showing that [Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members] unknowingly communicated directly with [Salesforce's] servers." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022).

72. The wiretapping of Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members occurred in Pennsylvania, where Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members accessed the Website and where Salesforce's Chat function routed Plaintiffs Fajge and Babcock and Pennsylvania Subclass Members' electronic communications to Salesforce's own servers. *Popa*, 52 F.4th at 131.

73. The violation of the WESCA constitutes an invasion of privacy sufficient to confer Article III standing.

74. Plaintiff Yockey and Pennsylvania Website Class and Ride Aid Subclass Members seek all relief available under 18 Pa. Cons. Stat. § 5725(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiffs as the representatives of the Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For judgment in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded; and

(f) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: November 2, 2023                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Max S. Roberts*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiffs*

*Pro Hac Vice Application Forthcoming*