UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY BALLETTO,<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>    Defendant. | Case No. 23-cv-01017-JSW<br><br>**ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT AND CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 33 |

Now before the Court for consideration is the motion to dismiss filed by Defendant American Honda Motor Co., Inc. ("Honda"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it DENIES Honda's motion to dismiss.

## BACKGROUND

This case involves a challenge to Honda's use of a chat function on its website. The Court granted Honda's motion to dismiss Plaintiff Beverly Balletto's original complaint, with leave to amend. *See Balletto v. Am. Honda Motor Co.*, No. 23-cv-1017-JSW, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023). Balletto continues to seek relief for alleged violations of California's Invasion of Privacy Act ("CIPA"). New Plaintiffs Adam Fajge and Wendy Babcock seek relief for alleged violations of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"). *See* 18 Pa. C.S. §§ 5701 *et seq.*

According to Plaintiffs, Honda's chat function is an application programming interface ("API") developed by third-party Salesforce (the "Chat API"). The Chat API "can be 'plugged into' an existing website and is run from Salesforce web servers but allows for chat functionality on" Honda's website. When a customer interacts with the Chat API, there is no reference to Salesforce. (First Amended Complaint ¶¶ 10-11; *see also id.* ¶¶ 12-13.) Plaintiffs allege that the

Chat API needs to run on Salesforce servers "because Salesforce analyzes the customer-support agent interactions in real time to create live transcripts of communications as they occur[.]" (*Id.* ¶ 14.)

Plaintiffs also allege that Salesforce intercepts their communications and sends those communications to its Einstein data intelligence platform. Plaintiffs also allege that data Salesforce obtains from Chat API is "analyzed … before being provided to any entity that was a party to the conversation[.]" (*Id.* ¶¶ 24-25.) According to Plaintiffs, Salesforce then has the capability to use the information contained in chats "to (i) improve Salesforce's own products and services; (ii) develop new Salesforce products and services; and (iii) analyze Chat communications to assist with customer service interactions and data analytics." (*Id.* ¶ 27; *see also id.* ¶ 26.)

In sum, Plaintiffs allege that the Chat API "functions as a wiretap" and alleges that Honda aided Salesforce in intercepting their electronic communications without their consent. (*Id.* ¶¶ 32-39.)

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.     Applicable Legal Standards.**

Under Rule 12(b)(6), a court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court should grant leave

2

to amend unless amendment would be futile. *See, e.g., Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

### B.   The Court Denies the Motion.[1]

#### 1.   Plaintiffs Allege Interception.

Honda argues that Balletto fails to allege that her communications were intercepted in transit. *See* Cal. Pen. Code § 631(a)(2) (requiring that a person, without consent, "reads, attempts to read, or to lean the contents or meaning of any message, report, or communication *while the same is in transit*") (emphasis added).[2] In *Garcia v. Yeti Coolers*, the court found that the plaintiff stated a claim based on allegations that when she used the chat function the defendant simultaneously routed chat messages through a third party's servers. No. 23-cv-02643-RGK-RAO, 2023 WL 5736006, at *4 (C.D. Cal. Sept. 5, 2023); *see also James v. Walt Disney Co.*, No. 23-cv-02500-EMC, -- F. Supp. 3d --, 2023 WL 7392285, at *14-16 (N.D. Cal. Nov. 8, 2023). Plaintiffs' allegations here are not materially different from the allegations in *Garcia*, and the Court concludes they are sufficient to state a claim.

#### 2.   Balletto's Remaining Allegations Are Sufficient to State a Claim Under CIPA.

Balletto's CIPA claim against Honda is based on a theory that it aided, agreed, employed, permitted, or conspired with Salesforce to violate CIPA. *See Balletto,* 2023 WL 7026931, at *1. Addressing two of the seminal California cases on the issue and a split within the Ninth Circuit, the Court concluded that in order to state a claim against Honda for aiding a CIPA violation, Balletto would be required to allege that Salesforce had *the capability* to use the information it gained for another purpose. *Id.* at *2; *see also Heiting v. Taro Pharms. USA, Inc.*, No. 23-cv-08002-SPG-E, 2023 WL 9319049 at *4 (C.D. Cal. Dec. 26, 2023) (following line of authority requiring allegations that third-party had capability to use communications for another purpose).

---

[1]   Plaintiffs have voluntarily withdrawn their request to certify a nationwide class. (*See* Opp. Br. at 2 n.2.) Accordingly, the Court DENIES AS MOOT that aspect of Honda's motion.

[2]   Plaintiffs argue the Court should not consider this argument because Honda did not raise it in the initial motion to dismiss. Honda's argument focuses on CIPA, but interception is an essential element of the WESCA claim. *See* 18 Pa. C.S. §§ 5702, 5725(a). Accordingly, the Court overrules Plaintiffs' objection and considers the argument.

3

1    The Court also concluded that Balletto failed to allege Salesforce had that capability.  *Id.* at *3;
2    *accord Yockey v. Salesforce, Inc.*, No. 22-cv-09067-JSW, -- F. Supp. 3d --, 2023 WL 5519323, at
3    *5 (N.D. Cal. Aug. 25, 2023).
4            In *Yockey*, the plaintiff alleged that the chat function was run from Salesforce web servers
5    and alleged that Salesforce received electronic communications from websites and analyzed
6    interactions to create live transcripts of those communications.  2023 WL 5519323, at *5.  The
7    court determined those allegations were insufficient to allege Salesforce had the capability of
8    using the communications "for any purpose other than to furnish them to" its clients.  *Id.*  In
9    contrast, in *Valenzuela v. Nationwide Mutual Insurance Company*, the court held the plaintiff
10   sufficiently alleged a third party had the capability to use information gained from a chat feature.
11   No. 22-cv-06177-MEMF-SK, -- F. Supp. 3d --, 2023 WL 5266033, at *4-5 (C.D. Cal. Aug. 14
12   2023).  In *Valenzuela,* the plaintiff alleged that the third-party embedded code into the defendant's
13   website, which enabled the third party "to secretly intercept in real time, eavesdrop upon, and store
14   transcripts of messages sent via [the] chat feature."  *Id.* at *4.  The plaintiff also alleged that the
15   third party's business model was "to harvest data from communications."  *Id.*
16           In *Heiting,* the court concluded that in order to allege a third-party's software functions
17   "less like a tape recorder and more like an independent entity capable of using the recorded
18   information for some other means," a plaintiff "must have at least pled some non-conclusory
19   factual allegations to support the use capabilities of the third-party software company involved."
20   2023 WL 9319049, at *4.  It reasoned that "to ask a plaintiff to plead with great particularity
21   exactly what a third-party software company is capable of doing with data gathered from [a]
22   defendant's website sets the pleading bar too high."  *Id.*  The court held that the plaintiff failed to
23   meet that pleading standard because the allegations that the third-party embedded code in the
24   defendant's website and then intercepted "data for some later unspecified use of its own" were
25   conclusory.  *Id.*
26           In contrast to the plaintiff in *Heiting,* Balletto does include allegations about how
27   Salesforce would be capable of using data from Honda's website: through the Einstein data
28   intelligence platform.  Balletto also specifies the purposes for which Salesforce uses that data.

4

(FAC ¶¶ 25-27). The Court concludes Balletto's allegations are not the type of conclusory allegations that led the courts in *Yockey* and *Heiting* to grant motions to dismiss. Rather, taking these allegations as true, the Court concludes Balletto alleges facts that show Salesforce has the capability to use data obtained from chat functions for its own purposes. *Cf. Garcia*, 2023 WL 5736006, at *3-4 (concluding plaintiff stated a claim where she alleged third-party mined conversations for data used to send targeted advertising).

### 3. WESCA

WESCA "offers a private civil cause of action to '[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [that statute]' against 'any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication.'" *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 124 (3rd Cir. 2022) (quoting 18 Pa. C.S. § 5725(a)). WESCA provides an exemption from liability "where all parties to the communication have given prior consent to such interception." 18 Pa. C.S. § 5704(4). In *Popa*, the court held that the defendants could not rely on that exemption "merely by showing [the plaintiff] unknowingly communicated directly with" the third-party's servers. 52 F.4th at 129. Instead, the exception applies where a plaintiff knew or should have known a conversation was being recorded. *Id.* at 132.

Honda argues the fact that Fajge and Babcock used the Chat function is, "as a matter of law, … tantamount to providing express consent to interception thereof." (Mot. at 11:12-14.) Honda also argues that they knew or should have known that an unknown third-party was intercepting their communications when they used Honda's chat function. Honda provides the Court with no authority to support this position.[3]

### CONCLUSION

For the foregoing reasons, the Court concludes Plaintiffs' allegations are sufficient to survive Honda's motion to dismiss and DENIES that motion. Honda's answer is due within the

---

[3] Honda also relies on *Commonwealth v. Proetto*, 771 A.2d 823 (Pa. Super. 2001). The court in *Popa*, however, noted that amendments to WESCA limited the holding in *Proetta* to its facts. *See* 52 F.4th at 128-30.

5

time prescribed by the Federal Rules of Civil Procedure.

The Court CONTINUES the case management conference scheduled for March 15, 2024 to March 22, 2024. The parties' joint case management conference statement shall be due on March 15, 2024.

**IT IS SO ORDERED**.

Dated: February 13, 2024

_____
JEFFREY S. WHITE
United States District Judge